UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Norman H. Schulman, M.D.,
Susan Schulman,

      Plaintiffs,

      v.                                          Civil Action No. 2:13-cv-193

Saloon Beverage, Inc. d/b/a
Sirloin Saloon, DWH I, LLC,
Susan Schulze-Claasen,

      Defendants.

## OPINION AND ORDER
(Docs. 62, 77)

Plaintiffs Norman H. Schulman, M.D. and Susan Schulman (the Schulmans) have filed this action against the above-captioned Defendants under Vermont's Dram Shop Act (DSA), 7 V.S.A. § 501, alleging that Defendants' sale of beer to Mark R. Clarke (Clarke) caused the February 18, 2011 head-on collision between the vehicle that Clarke was operating and the Schulmans' vehicle. (*See* Doc. 13.)[1] Currently pending is Defendants' Motion for Setoff (Doc. 62) and the Schulmans' Motion for Leave to File a Sur-Reply (Doc. 77). In their Motion, Defendants assert that the Schulmans have

---

[1] The corporate Defendants—Saloon Beverage, Inc. d/b/a Sirloin Saloon (Saloon Beverage) and DWH I, LLC (DWH)—were allegedly consolidated entities and alter egos of each other. (*See id.* at 4, ¶¶ 20, 22, 26.) The individual defendant, Susan Schulze-Claasen, was allegedly the owner and president of the corporate Defendants. (*Id.* ¶¶ 17, 18, 22.)

received a total of $731,741.09 in settlements and that Defendants are entitled to an equitable setoff in that amount from any judgment that might be entered against them.

The Schulmans oppose the Motion, arguing that Vermont law does not permit contribution among joint tortfeasors; that the collateral-source rule prohibits setoff; and that payments made to USAA are exempt from setoff.  (Doc. 66 at 2–5.)  In their Reply, Defendants assert that: (1) the DSA provides a right of contribution; (2) the Schulmans are not permitted to recover twice for the same injury; and (3) Defendants are entitled to a credit against any tort liability for all payments made by and on behalf of Clarke.  (Doc. 71 at 1.)

All parties have consented to direct assignment to the undersigned Magistrate Judge.  (Docs. 2, 3, 7.)  The Court held a hearing on Defendants' Motion on April 24, 2014.  After the hearing, the Schulmans filed a Motion for Leave to File a Sur-Reply (Doc. 77), and Defendants filed an Opposition (Doc. 79).  For the reasons that follow, the Schulmans' Motion for Leave to File a Sur-Reply (Doc. 79) is GRANTED and Defendants' Motion for Setoff (Doc. 62) is GRANTED.

## Background

Clarke and the Schulmans each carried insurance at the time of the collision.  Clarke was insured by Progressive.  The Schulmans were insured by USAA Insurance (USAA).  According to the Schulmans, after the collision, they retained counsel and filed

a claim with Progressive. They settled that claim for $731,741.09. (Doc. 66 at 2.)[2] The settlement was memorialized in two releases, described in more detail below.

On February 14, 2012, the Schulmans signed a general release in favor of Clarke Outdoors, Mark Clarke, Jennifer Clarke (collectively, "the Clarkes"), and Progressive, acknowledging receipt of $649,241.09 from the Clarkes and Progressive. (Doc. 62-1.) The release includes the following limiting provision:

> THIS RELEASE is specifically NOT intended to release, whether presently known or unknown, all other tortfeasors liable or claimed to be liable for any Dram Shop Act or liquor liability claims, and SPECIFICALLY EXCLUDES from this RELEASE, DWH I LLC, DWH II, LLC, FLOYD ENTERPRISES, INC., SIRLOIN SALOON OF MANCHESTER, VT, FIRST MERCURY INSURANCE COMPANY, and their respective subsidiaries, sub-corporations, affiliated partnerships, agents, servants and employees.

(*Id.*) Also, in exchange for $82,500 received jointly from the Schulmans and from Progressive on behalf of the Clarkes, USAA executed a general release in favor of the Schulmans and Progressive on behalf of the Clarkes. (Doc. 62-2.) The release from USAA includes the same limiting provision that appears in the February 14, 2012 release in favor of Progressive. (*Id.*)

## Analysis

### I.     Ruling on Setoff Prior to Determination of Liability

Defendants have brought their Motion for Setoff prior to any determination as to their liability. Indeed, as discussed at length in the Court's Order on the Schulmans'

---

[2] At the hearing on Defendants' Motion, the parties noted that in fact the settlement was for the policy limit of $750,000, and that the $18,258.91 difference went to pay for property damage and other items not directly related to the Schulmans' personal injuries. Since the issue of the $18,258.91 was not raised in the parties' written filings, the Court does not address it here.

3

Motion for Sanctions (Doc. 75), the parties dispute whether Clarke was even at the Sirloin Saloon on the night in question. If Defendants are ultimately determined not to be liable, then of course the question of setoff would be moot: there would be no recovery against which to apply such a setoff.

At least with respect to motions for summary judgment, there are conflicting opinions about the propriety of ruling on a damages issue prior to a determination of liability. *Compare Jewell-Rung Agency, Inc. v. Haddad Org., Ltd.*, 814 F. Supp. 337, 339 (S.D.N.Y. 1993) ("Courts have granted motions for summary judgment to limit damages while leaving issues of liability for trial.") *with Lovely H. v. Eggleston*, No. 05 Civ. 6920(KBF), 2012 WL 4459463, at *2 (S.D.N.Y. Sept. 19, 2012) (citing *Amerada Hess Corp. v. Yuma Shipping Corp.*, No. 82 Civ. 2136 (JFK), 1985 WL 458, at *4 (S.D.N.Y. Mar. 27, 1985)) (concluding that partial summary judgment motion was premature because it sought an adjudication on damages prior to a determination of liability).

The relevant issue in *Amerada Hess* was whether—in order to facilitate settlement discussions—a bifurcated damages *trial* should precede the liability trial. 1985 WL 458, at *4. The court ruled that it should not, stating: "To ask the Court to hold a trial simply to facilitate settlement . . . is asking too much in view of the Court's crowded docket." *Id.* Here, Defendants are not seeking a full-blown trial on the setoff issue; they are seeking a ruling on that issue as a matter of law. In light of that distinction, this Court concludes that it is appropriate to rule on the damages issue presented in the Motion for Setoff notwithstanding the fact that there has been no determination of liability.

Moreover, no party objects to the Court's ruling on the setoff issue, and doing so now is "in the interest of efficiency." *Gowanus Indus. Park v. Arthur H. Sulzer Assocs.*, No. 06-CV-0105 (KAM)(JO), 2013 WL 1334180, at *6 (E.D.N.Y. Mar. 7, 2013). The discussion that follows therefore assumes—without deciding—that Defendants are liable under the DSA.

## II.     Whether the Setoff Issue has Been Waived Under Rule 8(c)

After the April 24, 2014 hearing, the Schulmans filed a Motion for Leave to File a Sur-Reply. (Doc. 77.) There, the Schulmans point out that Defendants have not stated setoff as an affirmative defense in their Answer to the Complaint (Doc. 8) or in their Answer to Plaintiffs' Amended Complaint (Doc. 14). According to the Schulmans, Defendants should have affirmatively included setoff in their pleadings under V.R.C.P. 8(c), and by failing to do so have waived any right to a setoff. (Doc. 77 at 2.)

The first issue is whether the Court should grant the Schulmans leave to file their Sur-Reply. Defendants oppose the grant of such leave, arguing that it is untimely, improperly introduces an issue not previously raised, fails to comply with L.R. 7(a)(7), and in any case does not entitle the Schulmans to prevail on their theory that Defendants have waived any right to a setoff. (*See* Doc. 79 at 1.) Notably, counsel for the Schulmans describes his Motion for Leave to File a Sur-Reply alternatively as a belated affirmative response to the Court's inquiry at the April 24, 2014 hearing as to whether the parties wanted to address any further points in writing. The Court will treat it as such and accordingly GRANTS the Schulmans' Motion (Doc. 77) insofar as it seeks to raise the Rule 8(c) waiver issue. That seems especially appropriate given that Defendants are not

5

prejudiced by the Court's consideration of the issue, and in fact have filed their own memorandum addressing the merits of that issue.

Federal Rule 8(c) provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8(c).[3] It appears that that requirement "would include setoff." *Nouveau Indus. Inc. v. Liberty Mut. Ins. Co.*, No. 08 Civ. 10408(CM), 2011 WL 10901796, at *10 (S.D.N.Y. Sept. 7, 2011). That is certainly so as a matter of Vermont law. *See Wilk Paving, Inc. v. Southworth-Milton, Inc.*, 162 Vt. 552, 557, 649 A.2d 778, 783 (1994) ("Setoff . . . is an affirmative defense that is waived if a party fails to plead it."). Since the *Wilk* Court concluded that setoff is an affirmative defense, this Court is inclined to treat it as such in this case. *See* 5 Charles Alan Wright et al., *Federal Practice and Procedure Civil* § 1272 (3d ed. 2014) ("[I]f state law regards a matter as an affirmative defense, it usually will be treated in the same fashion in a federal court in that state even though it is not specifically listed in Rule 8(c).").

It is not clear whether the *Wilk* Court intended to hold that there are no exceptions to the waiver rule. However, the Court did discuss whether a failure to plead a setoff could be cured by filing a Rule 15 motion to amend. The answer in that case was no, because the issue of setoff was not raised until after trial. *See Wilk*, 162 Vt. at 558, 649 A.2d at 783. This case is in a very different procedural posture: no trial has yet commenced, let alone concluded.

---

[3] The Federal Rules of Civil Procedure—rather than the Vermont Rules—apply in this diversity case. *See Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986) ("[I]n federal diversity cases such as this, procedural matters are governed by the Federal Rules of Civil Procedure . . . .").

In any case, *Wilk* does not bind this Court on the federal procedural question of the effect of failure to plead an affirmative defense. On that issue, there is ample authority for the proposition that "the substance of many unpleaded Rule 8(c) affirmative defenses may be asserted by pretrial motions, particularly in the absence of any showing of prejudice to the opposing party and assuming it has had an opportunity to respond." 5 Charles Alan Wright et al., *Federal Practice and Procedure Civil* § 1278 (3d ed. 2014) (citing cases); *see also Nouveau Indus. Inc.*, 2011 WL 10901796, at *11 ("[T]he Second Circuit has recently held that '*absent prejudice to the plaintiff*, a defendant may raise an affirmative defense in a motion for summary judgment for the first time.'" (quoting *Labrinos v. Exxon Mobil Corp.*, 349 F. App'x 613, 615 (2d Cir. 2009))).

Here, the Schulmans have had ample opportunity to respond to Defendants' Motion for Setoff. They have filed a written opposition to the Motion, and also argued the Motion at the April 24, 2014 hearing. Moreover, the Schulmans have not articulated how they would be prejudiced by consideration of Defendants' Motion. The Court therefore concludes that, under these circumstances, Defendants' failure to plead setoff in their Answer does not amount to a waiver of that issue.

## III. Joint Liability and Vermont's Rule Against Contribution

Defendants, if they are found liable, would be joint tortfeasors together with Clarke.[4] The Schulmans argue that, if Defendants' Motion for Setoff is granted, the effect would be a contribution from the intoxicated driver, since Defendants' liability would be reduced by an amount paid by Clarke or his insurer. According to the Schulmans, Vermont's rule against contribution among joint tortfeasors prohibits that result. In short, the Schulmans' argument is that contribution is unavailable, and thus Defendants cannot be entitled to a setoff. As described below, the Schulmans' premise is faulty; contribution is available in this DSA case.[5]

Vermont does indeed follow the common-law rule that there is no right of contribution between joint tortfeasors. *Swett v. Haig's, Inc.*, 164 Vt. 1, 5, 663 A.2d 930, 932 (1995). However, the DSA specifically states: "A defendant in an action brought under this section has a right of contribution from any other responsible person or persons, which may be enforced in a separate action brought for that purpose." 7 V.S.A. § 501(f). The Vermont Supreme Court has held that "the wording of § 501(f) is clear and

---

[4] Although the Schulmans describe Clarke and Defendants as "separate and distinct tortfeasor[s]," (Doc. 66 at 3), the Schulmans' argument regarding Vermont's rule against contribution presupposes that Clarke and Defendants are joint tortfeasors. That is consistent with the ordinary definition of "joint tortfeasors": "Two or more tortfeasors who contributed to the claimant's injury and who may be joined as defendants in the same lawsuit." Black's Law Dictionary 1627 (9th ed. 2009).

[5] It is therefore unnecessary to rule on whether the availability of contribution is a prerequisite to obtaining a setoff. The Court notes, however, that at least one court has held that it is not. *See Fox ex rel. Fox v. Barnes*, No. 09 C 5453, 2013 WL 2111816, at *3 (N.D. Ill. May 15, 2013) ("The question of a setoff, however, is distinct from a right of contribution. . . . [A] defendant may still be entitled to a setoff, even when a cause of action for contribution is unavailable . . . .").

8

unambiguous," and that it authorizes contribution from the intoxicated driver to the dram shop.  *Swett*, 164 Vt. at 5, 663 A.2d at 932.

At the April 24, 2014 hearing, the Schulmans argued that under 7 V.S.A. § 501(f) and *Swett*, a dram shop must seek contribution either by way of a third-party complaint or in an entirely separate action.  Even if that is true, Defendants are not seeking contribution from the Clarkes.[6]  Rather, Defendants are seeking a setoff for payment that the Schulmans have already received from the Clarkes (or their insurer).  Assuming—without deciding—that the availability of contribution is a prerequisite to obtaining a setoff, that requirement is no hurdle here because the DSA makes contribution available.

## IV. Collateral-Source Rule

The Court begins with the provisions of the Restatement (Second) of Torts § 920A:

> (1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.
>
> (2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

Restatement (Second) of Torts § 920A (1979).  Defendants argue that subsection (1) applies.  (Doc. 62 at 2.)  Plaintiffs argue that subsection (2) applies.  (Doc. 66 at 3.)

---

[6] Indeed, a contribution from the Clarkes in the amount that the Clarkes (or their insurer) have already paid would be unfair.  This case is different than *Swett*, in which the dram shop *was* seeking a contribution from the intoxicated driver.  In *Swett*, the Supreme Court did not address the effect of the driver's settlement with the injured plaintiff upon the dram shop's right to contribution in its third-party action against the driver.  *Swett*, 164 Vt. at 9, 663 A.2d at 934.  Neither was there any mention of setoff in the *Swett* opinion.

9

Section 920A contains the "collateral-source rule," which has been adopted in Vermont. *See Windsor Sch. Dist. v. State*, 2008 VT 27, ¶ 34, 956 A.2d 528, 542 (citing § 920A). "The collateral-source rule operates 'to deny to a defendant a setoff for payment the plaintiff receives from a third, or collateral, source.'" *Id.* at ¶ 32, 956 A.2d at 542 (quoting *Hall v. Miller*, 143 Vt. 135, 141, 465 A.2d 222, 225 (1983)).[7] "Most commonly applied where an insurance company has made a payment to compensate the plaintiff for his or her injuries, 'the collateral[-]source rule prevents the defendant wrongdoer from benefiting from the plaintiff's foresight in acquiring the insurance through any offsetting procedure.'" *Id.* (quoting *Hall*, 143 Vt. at 141–42, 465 A.2d at 225).

As noted above, if Defendants are found liable, they would be joint tortfeasors together with Clarke. Under the Restatement, a tortfeasor is entitled to a credit against his liability in the amount of "payments made by another who is, or believes he is, subject to the same tort liability." Restatement (Second) of Torts § 920A(1) (1979). In other words, a tortfeasor's liability is reduced by "a payment by another tortfeasor of an amount for which he is liable jointly with the defendant." *Id.* cmt. a. A reduction is appropriate here because another tortfeasor (Clarke) has (via his insurer) paid an amount towards the joint liability.

---

[7] At least one court has insisted that there is a difference between a "credit" as described in § 920A and a "setoff." *See Rose v. Via Christi Health Sys., Inc./St. Francis Campus*, 113 P.3d 241, 245 (Kan. 2005). For present purposes, all parties and the Court are content—as was the Vermont Supreme Court in *Windsor*—to use the term "setoff" as including the "credit" contemplated in § 920A.

The fact that the payment came from Clarke's insurer does not transform Progressive into a "collateral source." Of course, "[t]he rule that collateral benefits are not subtracted from the plaintiff's recovery applies to . . . [i]nsurance policies, whether maintained by the plaintiff or a third party." *Id.* cmt. c. But a source is not "collateral" just because it is an insurer. *See Scott v. Polak*, No. 2001-272, 2002 WL 34423800, at *1 (Vt. Feb. 2002) (unpublished mem.) ("A tortfeasor is entitled to offset an award of damages by the amount the tortfeasor's insurer pays on the insured's behalf to the injured party." (citing § 920A(1))). It is instead necessary to ascertain whether or not the insurer appears on the tortfeasing side of the equation. *See N. Atl. Fishing, Inc. v. Geremia*, 153 B.R. 607, 611–12 (D.R.I. 1993) (concluding that damages owed by tortfeasor must be reduced by amount paid by joint tortfeasor's insurer in exchange for release); *see also Leitinger v. DBart, Inc.*, 2007 WI 84, ¶ 26, 736 N.W.2d 1, 7 (2007) (specifically stating that, under the collateral-source rule, "the tortfeasor is not given credit for payments or benefits conferred upon the injured person by any person other than the tortfeasor or someone identified with the tortfeasor (such as the tortfeasor's insurance company)").[8]

The payment at issue in this case came from an insurance policy maintained not by Plaintiffs or by some innocent third party. Rather, the policy was maintained by Clarke—the intoxicated driver. A joint tortfeasor (or his insurer) is not a collateral

---

[8] It is worth noting—as this Court did in *Melo v. Allstate Insurance Co.*, 800 F. Supp. 2d 596, 600 (D. Vt. 2011)—that the Vermont Supreme Court in *Windsor* cited *Leitinger* with approval. *See Windsor*, 2008 VT 27, ¶ 35. Also, in *My Sister's Place v. City of Burlington*, 139 Vt. 602, 613, 433 A.2d 275, 281 (1981), the Vermont Supreme Court cited *Helfend v. Southern California Rapid Transit District*, 465 P.2d 61 (Cal. 1970). The *Helfend* court specifically stated that the collateral-source rule "does not apply to payments by joint tortfeasors or to benefits the plaintiff receives from a tortfeasor's insurance coverage." 465 P.2d at 65 n.7.

source. The collateral-source rule does not apply; Defendants, if they are found liable, would be entitled to a setoff.[9]

## V.     Setoff Amount

The Schulmans argue that "the $82,500.00 that was paid to plaintiffs' insurer from the settlement proceeds to reimburse it for amounts paid on plaintiffs' behalf is exempt from setoff." (Doc. 66 at 4–5.) Defendants insist that they are entitled to a setoff equivalent to the total $731,741.09 settlement paid on behalf of Mark Clarke, of which $649,241.09 was paid directly to the Schulmans, and $82,500 was paid to USAA to reimburse it for the amounts it had paid to the Schulmans. (Doc. 71 at 6.) According to Defendants, it is irrelevant that the payment was structured with the $82,500 going to USAA; that sum could theoretically have been paid directly to the Schulmans.

At the April 24, 2014 hearing, the Schulmans argued that the $82,500 came from a collateral source because it was paid from the settlement proceeds to reimburse their insurer, USAA. The Vermont Supreme Court has indeed stated that the collateral-source rule applies "in cases where the collateral source would be recompensed from the total recovery through subrogation, refund or some other arrangement." *My Sister's Place v. City of Burlington*, 139 Vt. 602, 613, 433 A.2d 275, 281 (1981) (citing *Helfend v. S. Cal.*

---

[9] Absent a showing that excluding evidence of the Schulmans' settlement with the Clarkes would be unfair or prejudicial, *see Quirion v. Forcier*, 161 Vt. 15, 19, 632 A.2d 365, 368 (1993), the Court intends to follow the "court rule" articulated in *Slayton v. Ford Motor Co.*, 140 Vt. 27, 435 A.2d 946 (1981), and to apply the setoff only after the jury has determined the Schulmans' total damages.

12

*Rapid Transit Dist.*, 465 P.2d 61, 69 (Cal. 1970)).[10]  However, neither *My Sister's Place* nor *Helfend* says whether reimbursement of a collateral source from the tort recovery against one joint tortfeasor gives rise to a setoff in the amount of the reimbursement in favor of another joint tortfeasor.

Importantly, the *Helfend* court did take care to express that "we do not suggest that the tortfeasor be required to pay doubly for his wrong—once to the injured party and again to reimburse the plaintiff's collateral source." *Helfend*, 465 P.2d at 67 n.15. That statement applies with equal force to joint tortfeasors. Denying Defendants a setoff for the $82,500 would effectively mean that the tortfeasors in this case would be paying that sum twice. The Clarkes and Progressive have already reimbursed the Schulmans' collateral source in the amount of $82,500. Defendants should not be required to pay that amount to the Schulmans. A contrary conclusion would require the joint tortfeasors to pay doubly for their joint wrong.

This conclusion is consistent with preserving USAA's subrogation (or reimbursement) rights. Here, USAA was able to recover $82,500 from the Clarkes or their insurer—USAA's rights with respect to the Schulmans' recovery against them have already been vindicated. Moreover, USAA has not released Defendants from liability

---

[10] Application of the collateral-source rule in such cases is consistent with one of the stated rationales for the collateral-source rule: preserving the subrogation rights of insurers who pay benefits to the plaintiff. *See* 1 Dan B. Dobbs, *Law of Remedies* § 3.8(1) (2d ed. 1993) ("[I]f the defendant were entitled to a credit . . . on the ground that the plaintiff's insurer had paid it, the plaintiff would have no claim to which the insurer could be subrogated.").

under the DSA, (*see* Doc. 62-2), and conceivably might seek a reimbursement out of any recovery the Schulmans obtain against Defendants.[11]

## **Conclusion**

For the reasons stated above, the Schulmans' Motion for Leave to File a Sur-Reply (Doc. 77) is GRANTED and Defendants' Motion for Setoff (Doc. 62) is GRANTED. If Defendants are found liable, their liability will be reduced in the amount of $731,741.09.

Dated at Burlington, in the District of Vermont, this 12th day of May, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

---

[11] At the April 24, 2014 hearing, counsel for Defendants indicated her understanding that USAA has paid the Schulmans significantly more than $82,500.