UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Norman H. Schulman, M.D.,
Susan Schulman,

           Plaintiffs,

           v.                                      Civil Action No. 2:13-cv-193

Saloon Beverage, Inc. d/b/a
Sirloin Saloon, DWH I, LLC,
Susan Schulze-Claasen,

           Defendants.

## OPINION AND ORDER
(Docs. 80, 82)

Plaintiffs Norman H. Schulman, M.D. and Susan Schulman (the Schulmans) have filed this diversity action against the above-captioned Defendants under Vermont's Dram Shop Act (DSA), 7 V.S.A. § 501, alleging that Defendants' sale of beer to Mark R. Clarke caused the February 18, 2011 head-on collision between the vehicle that Clarke was operating and the Schulmans' vehicle.  (*See* Doc. 13.)  Defendants deny that Clarke entered Defendants' restaurant, the Sirloin Saloon, or consumed beers there on February 18, 2011.  (*See* Doc. 14 at 4–5, ¶¶ 41–42, 44.)

Currently pending is Defendants' Motion to Quash a subpoena filed by the Schulmans commanding John Eule to appear for a deposition.  (Doc. 80.)  Also pending is Defendants' Motion in Limine seeking to exclude statements made by Clarke to others that he was at the Sirloin Saloon prior to the collision.  (Doc. 82.)  The Court heard

argument on the Motions on July 8, 2014.  All parties have consented to direct assignment to the undersigned Magistrate Judge.  (Docs. 2, 3, 7.)  For the reasons that follow, Defendants' Motion to Quash (Doc. 80) is DENIED, and Defendants' Motion in Limine (Doc. 82) is DENIED.

## Background

A central issue in this DSA case is whether Clarke was a patron at the Sirloin Saloon on the night in question.  That issue was the subject of the Schulmans' Motion for Sanctions (Doc. 55), which the Court denied in an Order dated April 18, 2014.  (Doc. 75.) Familiarity with that Order is presumed, although for present purposes it is perhaps sufficient to note that discovery has produced no documentary evidence of Clarke's presence at the Sirloin Saloon on February 18, 2011.  Clarke himself has not been deposed in this case, and discovery has been closed since March 31, 2014.  (*See* Doc. 46 at 1.)  The following additional facts are drawn from the Court's review of police video recordings supplied by the Schulmans (Docs. 87-1; 87-2).

On the night of February 18, 2011, Vermont State Police Trooper Travis Hess responded to a report of the collision and, upon arriving near the scene, spotted Clarke in the snow off the side of the road.  Trooper Hess ordered Clarke out of the snow and apprehended him.  Clarke made statements, including an admission that he had recently consumed three or four beers.  A few minutes later during their roadside interaction, after conducting field sobriety tests, Trooper Hess asked Clarke if he remembered what bar or restaurant he was at, and Clarke responded, "the Sirloin Saloon."  (Doc. 87-1.)

Numerous emergency vehicles with lights and sirens flowed toward the scene of the collision as Clarke and Trooper Hess spoke.

At the police station after being arrested, Clarke made similar statements to Trooper Hess and to Vermont Department of Liquor Control Officer Jason Elmer. Specifically, Clarke told Trooper Hess that he had driven from the Sugarbush ski area to Manchester, Vermont, and when asked where he was in Manchester, Clarke responded, "Sirloin Saloon." (Doc. 87-2.) Trooper Hess also asked Clarke what he had been drinking, and Clarke stated that it was "Sierra Nevada draft." (*Id.*) Also at the police station, Officer Elmer asked Clarke a series of questions, the first of which was whether Clarke remembered what time he arrived at the Sirloin Saloon; Clarke responded that it was a couple of hours ago. Trooper Hess noted Clarke's statements in several affidavits and police reports. (*See* Doc. 87-3.)

Additional factual background is set forth as necessary below.

## Analysis

### I.  Defendants' Motion in Limine

Defendants seek the exclusion of the statements made by Mark Clarke to Trooper Hess and Officer Elmer that he had been at the Sirloin Saloon, arguing that those statements are inadmissible hearsay. Defendants also contend that the same statements, as recounted in Trooper Hess's police reports, are double hearsay. The Schulmans do not dispute that Clarke's statements are hearsay as defined by Fed. R. Evid. 801, but assert that the statements are admissible under the exceptions in Fed. R. Evid. 804(b)(3), 803(2), 803(6), 803(8), and 807.

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks and citation omitted).  Because a ruling on a motion in limine "is subject to change when the case unfolds," the Court's evidentiary rulings here are preliminary only.  *Id.* at 139 (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)).

### A.    Statement Against Interest

Under Rule 804(b)(3), a "statement against interest" is excepted from the rule against hearsay.  In a civil case such as this, a "statement against interest" is a statement that:

> a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability.

Fed. R. Evid. 804(b)(3)(A).  The exception only applies, however, when the declarant is "unavailable" as defined by Fed. R. Evid. 804(a).

### 1.    Clarke's Availability; The Court's Subpoena Power

In their Motion, Defendants argue that Rule 804(b)(3) does not apply because the Schulmans have not shown that Clarke is unavailable as a witness.  The Schulmans apparently concede that Clarke might appear and testify at trial, but seek a ruling regarding the application of Rule 804(b)(3) in the event that Clarke is unavailable.  (*See* Doc.87 at 3.)  In their Reply, Defendants concede that the Court may rule on the issue.

(*See* Doc. 90 at 2 ("Although it is not yet known whether Clarke will appear and testify at trial, the issue of whether Clarke's statement that he was at the Sirloin Saloon qualifies as a statement against interest is ripe for the Court's consideration.").)

The Court concludes that it may properly suggest the outcome of the Rule 804(b)(3) analysis in the event that Clarke is unavailable. *See Samad Bros., Inc. v. Bokara Rug Co.*, No. 09 Civ. 5843(JFK)(KNF), 2012 WL 43613, at *1 (S.D.N.Y. Jan. 9, 2012) (ruling on motion in limine on the assumption that the declarant would be unavailable to testify at trial). The Court nevertheless notes the following. The Schulmans have the burden under Rule 804(b)(3) to demonstrate that Clarke is unavailable. *See United States v. Wexler*, 522 F.3d 194, 202 (2d Cir. 2008). This is a condition precedent to admissibility under Rule 804(b)(3). If the Schulmans are going to offer Clarke's statements for admission at trial as statements against interest, they must make that preliminary showing. Notably, if the Schulmans intend to rely upon Rule 804(a)(5)(B) to establish unavailability, they must show that they have been unable, "by process or other reasonable means," to procure Clarke's "attendance or testimony." In prior proceedings in this case, the Schulmans have suggested that Clarke is beyond the subpoena power of the Court because he is more than 100 miles from the courthouse.[1]

That is incorrect; this Court may issue a subpoena for Clarke, even though he resides in Connecticut. In fact, this Court is the only court that can issue a subpoena for Clarke in the pending case. *See* Fed. R. Civ. P. 45(a)(2) ("A subpoena must issue from the court where the action is pending."). The subpoena may be served in Connecticut.

---

[1] Police records in this case reflect that Clarke is a Connecticut resident. (*See* Doc. 82-2 at 6.)

Fed. R. Civ. P. 45(b)(2) ("A subpoena may be served at any place within the United States.").  There is a limitation on the place of compliance, *see* Fed. R. Civ. P. 45(c), but that does not impact the Court's power to issue the subpoena.

The Court concludes that the Schulmans must establish that they have employed process or "reasonable means" to procure Clarke's deposition testimony.  *See* Fed. R. Evid. 804 advisory committee's note (1974 Enactment, Note to Subdivision (a)(5)) ("The amendment is designed primarily to require that an attempt be made to depose a witness (as well as to seek his attendance) as a precondition to the witness being deemed unavailable.").  The Schulmans are incorrect insofar as they argue that unavailability focuses only on unavailability at trial.  The Advisory Committee's Note makes clear that, for Rule 804(a)(5)(B) to apply, an attempt must be made to depose a witness *and* seek his attendance.  *See* 2 Kenneth Broun et al., *McCormick on Evidence* § 253 (7th ed.) ("When absence is relied upon as the basis of unavailability and hearsay is offered under the exceptions in Rules 804(b)(2), (b)(3), and (b)(4), the Federal Rule imposes a further requirement.  The proponent must demonstrate an inability to take the deposition of the missing witness.").  Moreover, obtaining the witness's deposition testimony is not a mere procedural exercise: the deposition testimony itself may be admissible at trial (even if the witness is not a party) as described by Fed. R. Civ. P. 32(a)(4).

Moreover, the issue of whether Clarke was at the Sirloin Saloon on the night in question is a central issue in this case.  The Schulmans' misunderstanding about the Court's subpoena power should not preclude discovery of this vital piece of evidence.  For these reasons, the Court concludes that there is "good cause" under Fed. R. Civ. P.

6

16(b)(4) to reopen discovery for the purpose of subpoenaing and deposing Clarke if the Schulmans are planning on satisfying their burden to show Rule 804(b)(3) unavailability. Failure to attempt to accomplish a deposition of Clarke will affect the Court's ultimate decision on availability under Rule 804(b)(3).

### 2.    Clarke's Statements

Defendants concede that Clarke's statements that he had imbibed three to four beers might have been against his pecuniary, proprietary, and penal interests because those statements exposed him to both civil and criminal liability.  (Doc. 82 at 5.)  But according to Defendants, Clarke's "statement as to the physical location of where he consumed alcohol prior to the accident would not expose him to such liability."  (*Id.*) The Schulmans argue, however, that "Clarke's identification of the specific location where he was drinking was self-inculpatory because it linked Clarke to the crime and enabled law enforcement officers to gather corroborating information that resulted in Clarke's conviction."  (Doc. 87 at 4.)  Defendants insist that Clarke's statement about where he was drinking is collateral to his admissions relating to his alcohol consumption. (Doc. 90 at 3.)

It is certainly true that just because a statement is collateral to a self-inculpatory statement does not mean that the collateral statement is a statement against interest.  *See Williamson v. United States*, 512 U.S. 594, 600 (1994) ("[T]he fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability."); *see also id.* at 599–600 ("The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-

7

self-inculpatory parts.  One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.").  The Supreme Court has also recognized, however, that "statements that are on their face neutral may actually be against the declarant's interest."  *Williamson*, 512 U.S. at 603.  The *Williamson* Court articulated some examples:

> "I hid the gun in Joe's apartment" may not be a confession of a crime; but if it is likely to help the police find the murder weapon, then it is certainly self-inculpatory. "Sam and I went to Joe's house" might be against the declarant's interest if a reasonable person in the declarant's shoes would realize that being linked to Joe and Sam would implicate the declarant in Joe and Sam's conspiracy.

*Id.*  "[O]ther statements that give the police significant details about the crime may also, depending on the situation, be against the declarant's interest."  *Id.*

> The question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest that a reasonable person in the declarant's position would not have made the statement unless believing it to be true, and this question can only be answered in light of all the surrounding circumstances.

*Id.* at 603–04 (internal quotation marks omitted).

Here, the Court concludes that Clarke's statements about the Sirloin Saloon were at least likely to give investigators significant details about his wrongdoing.  That information would have directed investigators to the Sirloin Saloon, where they could have conducted interviews or searched for records to prove how much Clarke drank and when, among other details.  *See United States v. Moses*, 148 F.3d 277, 280–81 (3d Cir. 1998) (declarant's statements implicating defendant in kickback scheme and indicating the place where declarant was meeting defendant to make payments "provided self-

inculpatory information that might have enabled the authorities to better investigate his wrongdoing").

Defendants represent that the police file was produced as part of discovery in this case, and that there is no indication in that file that the police in fact contacted the Sirloin Saloon or otherwise obtained any corroborating information from the Sirloin Saloon. (Doc. 90 at 3.)  However, the test is whether the information is *likely* to produce details of the wrongdoing; there is no requirement that the details actually be investigated, or that the investigation be fruitful.  As the Supreme Court recognized, the declarant's statement that he "hid the gun in Joe's apartment" might turn out to be a lie, but it would certainly be grounds to seek to search Joe's apartment for the gun, and in that sense is at least likely to help police find the murder weapon.  The Court accordingly concludes that, assuming that Clarke is unavailable, his statements identifying the Sirloin Saloon are statements against interest and are admissible under Fed. R. Evid. 804(b)(3).

### B.   Excited Utterance

The Court also concludes that Clarke's roadside statement to Trooper Hess identifying the Sirloin Saloon is admissible as an excited utterance under Fed. R. Evid. 803(2).  A statement is not excluded by the rule against hearsay (regardless of the declarant's availability as a witness) when it is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2).  Defendants assert that Clarke's statement regarding the Sirloin Saloon does not qualify as an excited utterance because it was made in response to a pointed question rather than spontaneously; because there is no evidence from which to

9

infer that Clarke was emotional or excited; and because the statement related only to a non-startling occurrence that purportedly occurred prior to the collision.  The Schulmans, by contrast, assert that Clarke's roadside Sirloin Saloon statement was made about 16 minutes after the collision, and his statement at the police station was made about one hour and 23 minutes after the collision.

"'[A]n excited utterance need not be contemporaneous with the startling event to be admissible.'"  *United States v. Fell*, 531 F.3d 197, 231 (2d Cir. 2008) (quoting *United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002)).  "Rather, the key question governing admission is whether the declarant was, within the meaning of Rule 803(2), under the stress of excitement caused by the event or condition."  *Id.* (internal quotation marks and citation omitted).  Excited utterances "are thought to be reliable because the declarant, in a state of excitement, is unlikely to muster the reflection necessary for fabrication." *Brown v. Keane*, 355 F.3d 82, 90 (2d Cir. 2004).  For the reasons described below, the Court concludes that Clarke's identification of the Sirloin Saloon was both related to a startling event or condition, and was made while Clarke was under the stress of excitement that the condition caused.

Regarding the relation of the statement to that startling event, the Court has no difficulty concluding that Clarke's statement about where he had been drinking was "related" to the collision that the drinking had caused.  *See State v. Spencer*, 1997 ME 76, ¶ 3, 697 A.2d 55, 55–56 (statement by passenger that the driver had been "drinking whiskey all day" was "related" to the accident (as well as the driver's drinking

10

throughout the day) because it could "reasonably be interpreted as a shorthand expression for the fact that his mother was drinking at the time of the accident").

As to whether Clarke's statement was made under the stress of the startling event, the Court notes that, minutes prior to his Sirloin Saloon statement to Trooper Hess, Clarke was in a serious head-on collision.  Shortly after the collision, Trooper Hess arrived near the scene, spotted Clarke in the snow on the side of the road, and apprehended him.  Emergency vehicles were streaming toward the site of the collision. Clarke identified the Sirloin Saloon only minutes later.  The Court concludes that, under these circumstances, Clarke's roadside statement was made under the stress of the collision.

This case is factually different than the case cited by the Schulmans: *Royal & Sun Alliance Insurance PLC v. UPS Supply Chain Solutions, Inc.*, No. 09 C 5935, 2011 WL 3874878 (S.D.N.Y. Aug. 31, 2011).  In that case, the declarant made a statement related to the cause of a collision 65 minutes after being extricated from a burning truck, with injuries that eventually proved fatal.  *Id.* at *16.  The court concluded that the statement was admissible as an excited utterance.  *Id.*  Here, Clarke escaped the collision largely uninjured.  While injuries can certainly support a conclusion that an utterance was "excited" under Rule 803(2), they are not necessary for the rule to apply.  The Court concludes that in this case, even though Clarke was largely uninjured, the collision and its aftermath were sufficiently startling to trigger the excited utterance exception, especially where Clarke's statement was made so soon after the collision.

11

The Court rejects Defendants' contrary arguments.  It is true that Clarke made the Sirloin Saloon statement in response to a question, but that fact does not preclude the excited utterance exception.  *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (per curiam) (applying New York law).  Defendants assert that, at the time Clarke made the Sirloin Saloon statement, he appeared to be "quiet-spoken and subdued."  (Doc. 90 at 4.) That also does not preclude the excited utterance exception.  *See United States v. Thomas*, No. 3:13-CR-00141 (VLB), 2014 WL 2168468, at *5 (D. Conn. May 23, 2014) (rejecting argument that 911 call by caller with a "cool demeanor" was not an excited utterance, reasoning that "Defendant cites no authority to support excluding a statement based on a party's subjective interpretation of the cadence and tone of a witness's testimony").

Defendants also suggest that other statements Clarke made to Hess in the minutes after the collision are of "questionable veracity," thereby suggesting that Clarke was capable of fabrication during that time.  (Doc. 90 at 5.)  The Court concludes that evaluating Clarke's veracity should be left to the fact-finder; that is not a task that should be undertaken in the present procedural context.  For the above reasons, the Court concludes that Clarke's roadside statement identifying the Sirloin Saloon is an excited utterance and is admissible under Fed. R. Evid. 803(2).

The Court cannot conclude that Clarke's statement at the police station was an excited utterance.  That statement was made more than an hour after the collision, after

Clarke's physical condition had stabilized, and in a much more sterile environment.  It was not made under the stress caused by the event or condition.[2]

### C.    Police Records and Double Hearsay

There is also a dispute about whether the notes of Clarke's statements that appear in Trooper Hess's police reports are admissible.  Generally, a police report may be admissible as a business or public record under Fed. R. Evid. 803(6) or 803(8).  *See Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (police report admissible as a public record); *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U.*, 605 F.2d 1228, 1250–51 (2d Cir. 1979) (police report admitted as a business record).  But not all statements in police reports are admissible.  Defendants correctly point out that a statement is not admissible merely because it is contained in a police report.  *See Parsons*, 929 F.2d at 907 ("'It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted *but that statements made by third persons under no business duty to report may not*.'" (quoting *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983))).

Here, however, the Court has concluded that Clarke's statements identifying the Sirloin Saloon are admissible under other exceptions to the hearsay rule.  Since exceptions apply both to the statements themselves and to the police reports in which those statements appear, the statements as they appear in the reports would survive a hearsay challenge.  *See* Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by

---

[2]  However, assuming Clarke's unavailability, the statement at the police station would be admissible under Fed. R. Evid. 804(b)(3).

13

the rule against hearsay if each part of the combined statements conforms with an

exception to the rule.").[3]

## II.   Defendants' Motion to Quash

Under Fed. R. Civ. P. 45(d)(3), Defendants move to quash the subpoena for John

Eule that the Schulmans have filed, asserting that:

> (1) Plaintiffs have failed to obtain leave from the Court to conduct this
> additional deposition, beyond the agreed-upon discovery period; (2) the
> subpoena fails to allow a reasonable time to comply; (3) it requires Mr.
> Eule to appear beyond the geographical limit specified in Rule 45(c); (4) it
> seeks disclosure of privileged or other protected matter to which no
> exception or waiver applies; and (5) Mr. Eule's testimony has no relevance
> to any matter in dispute in this case.

(Doc. 80 at 1–2.)  The Schulmans oppose the Motion to Quash, arguing that Eule's

deposition might be helpful in resolving whether Clarke was at the Sirloin Saloon.

Although discovery closed on March 31, 2014, (*see* Doc. 46 at 1), the Schulmans request

that the Court allow the deposition to go forward.  (Doc. 88 at 2.)

The following additional facts are relevant to Defendants' Motion to Quash, and

are drawn primarily from affidavits already in the record, including Eule's affidavit dated

February 27, 2014 (Doc. 61-5).  Seth Dunne—who was the Sirloin Saloon's general

manager at the relevant times—has testified that, at a meeting with Officer Elmer on the

night of the collision, he reviewed the restaurant's records and "determined that no

person meeting Mark Clarke's description had been at the bar that evening and no one

had ordered Sierra Nevada draft beers at any time that evening.  The Sirloin Saloon

---

[3]  In light of the above conclusions, the Court does not reach the Schulmans' additional argument
that Clarke's statements are admissible under the residual exception in Fed. R. Evid. 807.

served Sierra Nevada in bottles, but did not serve it on draft." (Doc. 61-3 at 1–2.)

According to Dunne, "I am certain that Mark Clarke was not at the Sirloin Saloon on

February 18, 2011." (*Id.* at 3.)  Officer Elmer, by contrast, has a very different

recollection of their meeting on that night.  According to Elmer in a March 12, 2014

affidavit:

> Dunne acknowledged to me that Clarke had been at the Sirloin Saloon the
> night of the accident.  Dunne also told me that Clarke sat at the bar, ate a
> hamburger, and had two draft beers to drink.  Based upon the information
> provided by Dunne, I concluded that Clarke had been at the Sirloin Saloon
> on the night of the accident.

(Doc. 63-3 at 1–2.)

Defendants were aware that the Schulmans had a claim against them no later than

April 21, 2011.  That is evidenced by the fact that Defendants Saloon Beverage, Inc. and

DWH I, LLC filed voluntary petitions for bankruptcy protection on that date, and in those

filings identified Norman Schulman and his attorney Lawrence Rosenblatt as creditors.

(*See* Doc. 55-14 at 14–15.)

John Eule is an insurance adjuster employed by Custard Insurance Adjusters

(Custard).  (Doc. 61-5 at 1, ¶ 1.)  The Sirloin Saloon's insurer, First Mercury Insurance

Company (First Mercury) asked Eule to investigate a potential claim brought by the

Schulmans arising out of the collision at issue.  (*See id.* at 1, ¶ 3.)  Eule met with Dunne a

few months after the collision.  (*See id.* at 1, ¶ 4.)  Eule's February 27, 2014 affidavit

does not mention whether he took any statement from Dunne regarding Clarke's presence

at the Sirloin Saloon.

The Schulmans expect that Eule did take a statement from Dunne. According to the Schulmans, Dunne's statement to Eule "will either corroborate Dunne's current position that Clarke was not in the Sirloin Saloon on the night of the accident or may expose Dunne's current position as inconsistent with what he purportedly told Vermont Liquor Control Agent Jason Elmer on the night of the accident." (Doc. 88 at 1.)

The Schulmans' subpoena is dated May 1, 2014. (Doc. 80-1.) It is directed to John Eule of Custard Insurance Adjusters with a mailing address at a post office box in Rutland, Vermont. The subpoena commands Eule to produce "a complete copy of the file maintained by John Eule and/or Custard Insurance Adjust[e]rs" for the claim arising out of the February 18, 2011 collision "including, but not limited to, all communications between Mr. Eule (or anyone on his behalf) and any representative of First Mercury Insurance Company." (*Id.*) The deposition was to be held on May 12, 2014 in Burlington, Vermont. Defendants filed their Motion to Quash on May 7, 2014. (Doc. 80.)

### A.    Whether to Modify the Scheduling Order

As noted above, discovery closed on March 31, 2014. (*See* Doc. 46 at 1.) Defendants argue that the subpoena should be quashed because the Schulmans have not obtained leave from the Court to conduct additional depositions outside of the discovery schedule. The Schulmans request that the Court allow the deposition to go forward.

Rule 16 of the Federal Rules of Civil Procedure allows a scheduling order to "be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Whether good cause exists turns on the 'diligence of the moving party.'" *Holmes v.*

16

*Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)).  Prejudice to the non-moving party is also relevant.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

The Court concludes that the Schulmans' request should be granted in part—for the reasons below, the Court will allow the deposition of Eule to go forward, but will limit the scope of the inquiry to statements, written or oral, that Dunne might have made to Eule bearing on Clarke's presence at (or absence from) the Sirloin Saloon.  The Schulmans represent that Eule's involvement only came to their attention around the time of the March 31, 2014 discovery deadline.  Moreover, they filed their subpoena only days after the Court issued its April 18, 2014 Order denying their Motion for Sanctions, in which the Court suggested that it might consider authorizing additional depositions if the issue were placed formally before the Court.  (*See* Doc. 75 at 11.)  Discovery closed relatively recently, and this is not a case where additional discovery is being sought close to trial.  Any prejudice is therefore minimal.  Moreover, as discussed below, the question of whether Clarke was at the Sirloin Saloon is a central factual issue in this case, so additional evidence on that issue is highly relevant.

### B.    Relevance

Defendants assert that Eule's testimony about the transmittal of the Sirloin Saloon's check records to First Mercury is not relevant to any matter at issue in the case. Questions about the transmittal of records were indeed at issue in Plaintiffs' Motion for Sanctions (Doc. 55), which the Court denied in an Order dated April 18, 2014 (Doc. 75). However, the Schulmans are not seeking any additional testimony from Eule on that

issue.  Rather, they seek testimony and records from Eule regarding Dunne's position, if expressed at his meeting with Eule, as to whether Clarke was at the Sirloin Saloon on the night in question.  That is a different issue, and it goes to one of the core factual questions in this case.

Defendants argue that Eule's testimony regarding any statement that Dunne might have made at their meeting would be irrelevant because Dunne has already been deposed, and because the Schulmans' assertion that Eule took a statement from Dunne is speculation.  (Doc. 91 at 2–3.)  Defendants point out that Dunne has testified that he has not given a written statement about the events of February 18 or February 19, 2011, either to Eule or anyone else.  (*See* Doc. 55-7, Dunne Dep. 15:21–16:2.)  The Court rejects those arguments.  Assuming that Dunne gave Eule no written statement, he might have made an oral statement or supplied other documentary information bearing on whether Clarke had been a Sirloin Saloon patron.  It is irrelevant that Dunne has already been deposed.  That might matter in cases where a party is attempting to demonstrate a "substantial need" to acquire information that is privileged because it was prepared in anticipation of litigation.  *E.g.*, *F.T.C. v. Hope Now Modifications, LLC*, Civil No. 09-1204 (JBS/JS), 2011 WL 2634029, at *3–4 (D.N.J. July 5, 2011) (defendants seeking interview notes that were covered by work-product doctrine failed to demonstrate substantial need because they had not demonstrated an inability to obtain the witness's deposition testimony).  But in this case—as described below—the work-product doctrine does not apply, and the Schulmans are not required to demonstrate "substantial need."

## C.      Work-Product Doctrine

Defendants argue that the file that Eule prepared for Custard was prepared in anticipation of litigation and is protected by the work-product doctrine under Fed. R. Civ. P. 26(b)(3)(A).[4]  According to Defendants, an insurance company's investigatory files are work-product protected against disclosure to third parties to the insurance contract.  The Schulmans argue that: (1) Defendants have waived any work-product privilege by failing to provide a privilege log or affidavit identifying the documents in Custard's possession; and (2) Defendants have failed to meet their burden of showing that Eule's file was prepared in anticipation of litigation rather than in the ordinary course of business.  (Doc. 88 at 4–5.)

Under Rule 26(b)(3), the party asserting work-product protection "bears the burden of establishing its applicability to the case at hand."  *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003) (citing cases).  As the text of Rule 26(b)(3) suggests, the party asserting the protection must show that the material was "prepared in anticipation of litigation" and that it was prepared "by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3).

---

[4]  Rule 26(b)(3)(A) provides:

*Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

A document is prepared in anticipation of litigation if "'in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'"  *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (quoting 8 Charles Alan Wright et al., *Federal Practice and Procedure Civil* § 2024 (1994)).  However, the "because of" formulation "withholds protection from documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Id.* at 1202.  This is true even where "[t]here is little doubt under the evidence that [a party] had the prospect of litigation in mind when it directed the preparation of the" document, *id.* at 1204, or that "such documents might also help in preparation for litigation," *id.* at 1202.

"Distinguishing between documents prepared in anticipation of litigation and those created in the ordinary course of business is particularly fact specific in the insurance context because 'the very business' of an insurance company 'is to evaluate claims that may ultimately ripen into litigation.'"  *Gov't Emps. Ins. Co. v. Saco*, No. CV 2012-5633(NGG)(MDG), 2013 WL 5502871, at *2 (E.D.N.Y. Oct. 2, 2013) (quoting *Weber v. Paduano*, No. 02 Civ. 3392(GEL), 2003 WL 161340, at *4 (S.D.N.Y. Jan. 22, 2003)); *see also* 8 Charles Alan Wright et al., *Federal Practice and Procedure Civil* § 2024 (3d ed. 2014) ("Reports prepared by or for insurers present particular difficulties as responding to claims and preparing for resulting litigation are significant parts of the ordinary business of insurers."); 17A Lee R. Russ et al., *Couch on Insurance* § 250:18 (3d ed. 2013) ("Application of the attorney-client and work[-]product privileges in

insurance cases has caused considerable disagreement among courts, in large part because the insurance claims handling is inherently litigious and often the prelude to litigation.").

Here, it seems fairly certain that the prospect of litigation was looming at the time Eule met with Dunne and prepared his report. Indeed, as evidenced by Defendants' bankruptcy filing, they were aware that the Schulmans had a claim against them no later than April 21, 2011. Moreover, Eule has specifically testified that First Mercury asked him to investigate a potential claim brought by the Schulmans arising out of the collision at issue. (Doc. 61-5 at 1, ¶ 3.) To drive home the point, Defendants have supplied the affidavit of David S. Afton, a First Mercury employee who was responsible for the Schulman file and who states that "First Mercury anticipated that a dram shop action would be filed against its insured." (Doc. 91-1 at 1, ¶ 5.) Afton also states that "First Mercury's communications with Custard Insurance Adjusters and Mr. Eule were undertaken in anticipation of litigation by the Schulmans and reflect First Mercury's strategy in responding to their legal claims." (*Id.* at 2, ¶ 6.)

The Court nevertheless concludes that Defendants have not supplied any evidence that Eule's report—or at least the portion regarding any statement from Dunne as to Clarke's presence—would not have been prepared "in essentially similar form," *Adlman*, 134 F.3d at 1202, had First Mercury and Defendants not anticipated litigation. Afton's affidavit, to the extent it speaks to that point, is entirely conclusory. Without any evidence on that issue, Defendants have not met their burden of proving that Eule's file was prepared in anticipation of litigation. *See Tudor Ins. Co. v. Stay Secure Constr.*

*Corp.*, 290 F.R.D. 37, 40–41 (S.D.N.Y. 2013) (party asserting work-product protection regarding portions of insurance investigation presented no evidence that the reports would have been different, and therefore did not meet its burden of proof).

Absent that showing, Defendants cannot benefit from work-product protection. It is irrelevant that the Schulmans are not parties to the insurance contract between Defendants and First Mercury. *See* 17A *Couch on Insurance* § 250:29 (3d ed. 2013) (noting that attempts to attain disclosure of insurers' claims files may come from insureds or from an injured third party). For the contrary position, Defendants rely upon *State Farm Mutual Auto Insurance Co. v. Howard*, 296 F.R.D. 692 (S.D. Ga. 2013). In that case, the court did state that "enabling a stranger to the contract (the Powerses, who point to no assignment of any claim from Howard against State Farm) to rake through the work-product/attorney communications portion of State Farm's claims file is not warranted under Rule 26(b)(1)." *Id.* at 695. However, the court did not state that the protection was warranted because the Powerses were not parties to the contract. Rather, the court had concluded that the insurance company had generated its investigative file in anticipation of litigation. *Id.*[5]

Because the Court concludes as it does, it is unnecessary to reach the Schulmans' alternative argument that Defendants have waived any work-product protection by failing

---

[5] Defendants also rely upon the following quotation from Edna Selan Epstein, 2 *The Attorney-Client Privilege and the Work-Product Doctrine*, 909 (5th ed. 2007): "[I]f it is a third party to the insurance contract that seeks to obtain access to those insurance companies' investigatory files, then those are generally work-product protected." The Court has been unable to find any other authorities suggesting that, in the insurance context, the application of the work-product doctrine depends on whether the party seeking the documentation is a party to the insurance contract. To the contrary, the test is whether the document was "prepared in anticipation of litigation" and whether it was prepared "by or for another party or its representative." Fed. R. Civ. P. 26(b)(3).

to supply a privilege log or otherwise comply with Rule 26(b)(5)(A).  The Court also
does not reach the potential issue of the applicability of Rule 26(b)(3)(A)(i) and (ii), since
the Schulmans have advanced no argument on that point.

### D.     Location of the Deposition

According to Defendants, Eule works and resides in Manchester, New Hampshire,
where Custard's offices are located.  Defendants say that, although Custard has a mailing
address in Rutland, Vermont, it has no physical presence there, and Eule does not
regularly transact business in person there.  Defendants accordingly argue that the
subpoena should be quashed because it violates the geographical limits of Rules
45(c)(1)(A) and 45(d)(3)(A)(ii).[6]  The Schulmans contend that Rule 45(c) does not
prevent Eule's deposition, arguing that Custard "maintains an office in Rutland, Vermont
from which Mr. Eule transacted the business that is germane to this case."  (Doc. 88 at 3.)

It does appear that Custard has an office in Rutland.  (*See* Doc. 61-5 at 1, ¶ 1.)
However, just because Eule might have worked out of Custard's Rutland office in the
course of his work regarding the February 18, 2011 collision does not mean that Eule
"resides, is employed, or regularly transacts business in person" in Rutland.  Fed. R. Civ.
P. 45(c)(1)(A).  Rather, it appears that Eule resides, is employed, and regularly transacts
business in person in Manchester, New Hampshire.[7]  However, the Schulmans also say

---

[6] Rule 45(c)(1)(A) provides that a subpoena may command a person to attend a deposition
"within 100 miles of where the person resides, is employed, or regularly transacts business in person."
Rule 45(d)(3)(A)(ii) obligates a court to quash a subpoena that "requires a person to comply beyond the
geographical limits specified in Rule 45(c)."

[7] The Court takes judicial notice of the fact that Manchester, New Hampshire is more than 100
miles from Burlington, Vermont.

that they "will gladly amend the subpoena to take Mr. Eule's deposition in Manchester, New Hampshire on a date and time that is convenient for Mr. Eule." (Doc. 88 at 3.) That concession resolves Defendants' concern about the 100-mile rule.

> ### E.    Time for Compliance

Defendants note that the Schulmans' subpoena was served no earlier than May 6, 2014, but commands Eule's deposition on May 12, 2014. Defendants assert that the subpoena does not allow for a reasonable time for compliance under Fed. R. Civ. P. 45(d)(3)(A)(i). "Although Rule 45 does not define 'reasonable time,' many courts have found fourteen days from the date of service as presumptively reasonable." *Brown v. Hendler*, No. 09 Civ. 4486(RLE), 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011). "Federal courts have also found compliance times of eight and seven days not to be reasonable." *Id.* (citing cases). Generally, how much time is reasonable, as the reasonableness test implies, depends on the circumstances.

Here, as noted above, the Schulmans say that they "will gladly amend the subpoena to take Mr. Eule's deposition in Manchester, New Hampshire on a date and time that is convenient for Mr. Eule." (Doc. 88 at 3.) Such an amendment should alleviate Defendants' concern about the time for compliance.

> ## Conclusion

For the reasons stated above, the Court DENIES Defendants' Motion to Quash (Doc. 80), and DENIES Defendants' Motion in Limine (Doc. 82). In the event that the Schulmans serve a revised subpoena upon Eule, the Court ORDERS as follows. The deposition shall be completed within 30 days, and shall take place in Manchester, New

24

Hampshire or another mutually agreeable location if it is within 100 miles of where Eule resides, is employed, or regularly transacts business in person.  The deposition and documents produced shall be limited to the issue of any information that Dunne might have given to Eule regarding whether Clarke was a patron at the Sirloin Saloon.

The Court also *sua sponte* reopens discovery for the purpose of subpoenaing Clarke for deposition.  The Schulmans may subpoena Clarke in conformance with Fed. R. Civ. P. 45, commanding his deposition testimony within 30 days.

Dated at Burlington, in the District of Vermont, this 9th day of July, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge